IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: 2265 Enterprise East LLC, | ) | Case No. 19-52510 |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor in Possession. | ) | Judge Koschik |
| | ) | |

**DEBTOR'S RESPONSE TO OBJECTION TO SALE MOTION**

Debtor 2265 Enterprise East, LLC respectfully sets forth the following for its Response to the Objection to its Sale Motion filed by Keystone Real Estate Lending Fund L.P. ("Keystone") [Docket No. 26]:

1. The Debtor has a polar star to guide it through this reorganization case: maximize the value of the real estate which is effectively its only asset for the benefit of the estate. Contrary to what is stated in the Objection filed by Keystone [Docket No. 26] (the "Objection") that business purpose and justification for the sale is set forth succinctly in paragraphs 12 and 13 of the Sale Motion [Docket No. 16]. Maximization of exposure and sale value of real estate owned by the estate through a bankruptcy sale has expressly been approved as a legitimate purpose of a bankruptcy filing in this District, over objections very similar to those raised in this case. *See In re Sandusky Permanent LLC,* 2017 WL 2470864 (Bankr. N.D. Ohio 2017).

2. Paragraph 12 of the Sale Motion establishes the reasoning behind the sale concept, and provides as follows:

"The auction sale format has been selected in this instance because the absence of a long-term tenant has depressed the value of the real estate, making it potentially difficult to demand top dollar from a traditional sale conducted by a broker with a single buyer. The Debtor believes that the auction format will result in the potential recovery of some of the lost value through the competitive bid process."

3. Bankruptcy case law has long held that a Debtor's reasonable business judgment is entitled to be effectuated where sales of assets are concerned. *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d. 386 (6th Cir. 1986).

4. Paragraph 13 of the Sale Motion emphasizes the reasoning behind the auction sale process requested herein, as follows:

"Based on discussions with Mr. Kiko and other real estate professionals who the Debtor's managing member has employed to buy and sell commercial real estate, the Debtor believes that a stalking horse bidder may be obtained by the time this motion is heard, but the Debtor does not have such a bidder yet. Regardless of whether the auction moves forward with or without a stalking horse, the Debtor believes that the auction process, with all bids subject to bankruptcy court approval, affords the best chance of maximizing the value of the property for the benefit of all parties in interest."

5. Cases supporting the approval of sales where the Debtor's business judgment is clearly articulated and focused on a sound bankruptcy objective (in addition to the ones cited above) are hornbook law in the federal bankruptcy courts. However, the *Sandusky Permanent LLC* case is especially worthy of review, because it addresses

many of the same elements present in the typical single asset real estate case, including this one. These elements include a debtor who owns a single real estate asset, a filing made after a foreclosure case is commenced, relatively few other creditors, and the usual assertions of bad faith and delay by the secured creditor.

6. *Sandusky Permanent LLC* is also notable because the scale of the case was similar to this one, and because the case looks beyond the usual list of factors that was developed in cases such as *In re Laguna Associates Ltd. P'ship*, 30 F.3d 734 (6th Cir. 1994) and *Trident Associates Limited P'ship*, 52 F3d.127 (6th Cir. 1995) which are cited by Keystone, to the critical issue of whether a reorganization is possible in the context of a Chapter 11 case.

7. In addition, the dangers of relying on the list of elements set forth in the "typical" bad faith filing cases have been eloquently summarized by Judge Queenan in the case of *In re Victoria Ltd. Partnership*, 187 B.R. 54 (Bankr. Mass 1995). That case explains the perils of the "good faith" cases, which include the inescapable fact that the list of factors included in many of the cases only recites the typical fact pattern of a single asset real estate case.

8. As the *Victoria* case points out, the Bankruptcy Code was altered in 1994 to include section 362(d)(3), which resolves the question of whether single asset cases are permitted in the affirmative, provided that the provisions of that section are complied with. Exceptions remain for "new debtor syndrome" cases such as *Trident* and *Laguna,* cited by Keystone, but this case, like *Sandusky Permanent LLC*, does not involve new debtor syndrome facts, and is instead an example of a deserving Debtor seeking to appropriately use reorganization to resolve an intractable problem.

3
19-52510-amk    Doc 29    FILED 11/24/19    ENTERED 11/24/19 20:17:13    Page 3 of 6

9. In this instance, reorganization is possible and probable. When Keystone's receiver was appointed on December 3, 2018, the Debtor was a solvent company with a long-term tenant that was generating gross rental income of $180,000 per year. That tenant was about to sign a lease renewal when it was "spooked" by the Receiver, who barred the Debtor's Managing Member from further discussion s with the tenant, and proceeded to drive the tenant away by demanding concessions in the new lease. Put simply, Keystone and its Receiver caused substantial diminution of value by driving the tenant away, and the Debtor intends to hold Keystone responsible for its actions in the claims phase of this case.

10. Once the claims objection process is considered, the critical weakness of the rest of Keystone's assertions becomes evident. These assertions include: that the Debtor cannot prevail in a stay relief action, that the sale proposed by the Debtor cannot benefit other creditors, that Keystone's mortgage comprises 99% of the claims in the estate, and that there is no sound business justification for the sale. In reality, it is not possible to know, at this stage of the case, what the sale of the property will realize for the benefit of the estate, but it seems evident that a properly advertised auction sale conducted by an experienced and well-regarding real estate auction firm with deep ties to the local and regional commercial market is the best way to maximize value.

11. Moreover, there is also no way to tell, at this stage of the case, whether Keystone's claims will be allowed, and if so, at what amount. Given that the damage to the property resulting from the departure of the tenant happened on Keystone's watch, after the Debtor's manager was dispossessed and threatened with legal action if he "trespassed" on the property or intervened in the "negotiations" ostensibly being

conducted by Taylor Jackson of Keystone, and given that Keystone, not the Debtor, lost the tenant and the income stream, though, it seems more than plausible that Keystone's claim may be appropriately adjusted by the Court during these proceedings.

12. Without knowing, until after the sale, what the property will bring when it is sold, and without knowing, prior to the conclusion of the claims process, the reasonable range of Keystone's allowed claim, if the claim is allowed at all, there is no way to accurately compute or estimate the estate's equity in the property. At this stage, the Debtor still hopes for a stalking horse bidder and is working with its professionals to bring about that result. However, there is another critical angle to this case that merits attention.

13. The receivership order entered on December 3, 2018 in this case (attached hereto as Exhibit "A"), in paragraph 7, entitled "Sale Procedure," directed the Receiver to begin advertising and marketing the Collateral "without delay" because "delay in soliciting buyers for the Collateral would unduly prejudice the parties to the proceeding." That was 355 days prior to the filing of this pleading— more than ***6 times*** the 59 days that will expire between the filing of this pleading and the proposed auction date of January 22, 2020. Nevertheless, having dithered, while in absolute control of the property, and having ignored the prompt sale mandate provided by the Common Pleas Court in the receivership order, Keystone attempts to argue, in paragraphs 4, 5, and 6 of its Objection, that the *Debtor's* objective is delay.

14. In fact, Keystone has had its bite at the apple, for nearly a year, and has failed to accomplish anything except the loss of a long-term tenant and significant

5

corresponding loss of value. The Debtor and its estate have appropriately sought relief in this Court, have satisfied their statutory duties, and are earnestly attempting to remedy the mess that Keystone has made of its balance sheet and its previously thriving rental business.

WHEREFORE, the Debtor respectfully asks that this Court OVERRULE Keystone's objection, APPROVE the Sale requested by the Debtor, and GRANT the Debtor all such further relief to which it is entitled.

Respectfully submitted,

/s/ Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Avenue
Cleveland, OH 44113
(216) 870-8866
tcoffey@tcoffeylaw.com

*Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Debtor's Response to Objection to Sale motion was served on all counsel and parties of record in this case by operation of the Court's electronic case filing system, on this 24nd day of November, 2019..

/s/ Thomas W. Coffey
Thomas W. Coffey (0046877)

*Proposed Counsel for the Debtor*