**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: 2265 Enterprise East LLC, | ) | Case No. 19-52510 |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor in Possession. | ) | Judge Koschik |
| | ) | |

---

## DEBTOR'S RESPONSE TO OBJECTION TO SALE MOTION

---

Debtor 2265 Enterprise East, LLC respectfully sets forth the following for its Response to the Objection to its Sale Motion filed by Keystone Real Estate Lending Fund L.P. ("Keystone") [Docket No. 26]:

1. The Debtor has a polar star to guide it through this reorganization case: maximize the value of the real estate which is effectively its only asset for the benefit of the estate. Contrary to what is stated in the Objection filed by Keystone [Docket No. 26] (the "Objection") that business purpose and justification for the sale is set forth succinctly in paragraphs 12 and 13 of the Sale Motion [Docket No. 16]. Maximization of exposure and sale value of real estate owned by the estate through a bankruptcy sale has expressly been approved as a legitimate purpose of a bankruptcy filing in this District, over objections very similar to those raised in this case. *See In re Sandusky Permanent LLC,* 2017 WL 2470864 (Bankr. N.D. Ohio 2017).

2. Paragraph 12 of the Sale Motion establishes the reasoning behind the sale concept, and provides as follows:

"The auction sale format has been selected in this instance because the absence of a long-term tenant has depressed the value of the real estate, making it potentially difficult to demand top dollar from a traditional sale conducted by a broker with a single buyer. The Debtor believes that the auction format will result in the potential recovery of some of the lost value through the competitive bid process."

3. Bankruptcy case law has long held that a Debtor's reasonable business judgment is entitled to be effectuated where sales of assets are concerned. *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986).

4. Paragraph 13 of the Sale Motion emphasizes the reasoning behind the auction sale process requested herein, as follows:

"Based on discussions with Mr. Kiko and other real estate professionals who the Debtor's managing member has employed to buy and sell commercial real estate, the Debtor believes that a stalking horse bidder may be obtained by the time this motion is heard, but the Debtor does not have such a bidder yet. Regardless of whether the auction moves forward with or without a stalking horse, the Debtor believes that the auction process, with all bids subject to bankruptcy court approval, affords the best chance of maximizing the value of the property for the benefit of all parties in interest."

5. Cases supporting the approval of sales where the Debtor's business judgment is clearly articulated and focused on a sound bankruptcy objective (in addition to the ones cited above) are hornbook law in the federal bankruptcy courts. However, the *Sandusky Permanent LLC* case is especially worthy of review, because it addresses

2

many of the same elements present in the typical single asset real estate case, including this one. These elements include a debtor who owns a single real estate asset, a filing made after a foreclosure case is commenced, relatively few other creditors, and the usual assertions of bad faith and delay by the secured creditor.

6. *Sandusky Permanent LLC* is also notable because the scale of the case was similar to this one, and because the case looks beyond the usual list of factors that was developed in cases such as *In re Laguna Associates Ltd. P'ship*, 30 F.3d 734 (6th Cir. 1994) and *Trident Associates Limited P'ship*, 52 F3d.127 (6th Cir. 1995) which are cited by Keystone, to the critical issue of whether a reorganization is possible in the context of a Chapter 11 case.

7. In addition, the dangers of relying on the list of elements set forth in the "typical" bad faith filing cases have been eloquently summarized by Judge Queenan in the case of *In re Victoria Ltd. Partnership*, 187 B.R. 54 (Bankr. Mass 1995). That case explains the perils of the "good faith" cases, which include the inescapable fact that the list of factors included in many of the cases only recites the typical fact pattern of a single asset real estate case.

8. As the *Victoria* case points out, the Bankruptcy Code was altered in 1994 to include section 362(d)(3), which resolves the question of whether single asset cases are permitted in the affirmative, provided that the provisions of that section are complied with. Exceptions remain for "new debtor syndrome" cases such as *Trident* and *Laguna,* cited by Keystone, but this case, like *Sandusky Permanent LLC*, does not involve new debtor syndrome facts, and is instead an example of a deserving Debtor seeking to appropriately use reorganization to resolve an intractable problem.

9. In this instance, reorganization is possible and probable. When Keystone's receiver was appointed on December 3, 2018, the Debtor was a solvent company with a long-term tenant that was generating gross rental income of $180,000 per year. That tenant was about to sign a lease renewal when it was "spooked" by the Receiver, who barred the Debtor's Managing Member from further discussion s with the tenant, and proceeded to drive the tenant away by demanding concessions in the new lease. Put simply, Keystone and its Receiver caused substantial diminution of value by driving the tenant away, and the Debtor intends to hold Keystone responsible for its actions in the claims phase of this case.

10. Once the claims objection process is considered, the critical weakness of the rest of Keystone's assertions becomes evident. These assertions include: that the Debtor cannot prevail in a stay relief action, that the sale proposed by the Debtor cannot benefit other creditors, that Keystone's mortgage comprises 99% of the claims in the estate, and that there is no sound business justification for the sale. In reality, it is not possible to know, at this stage of the case, what the sale of the property will realize for the benefit of the estate, but it seems evident that a properly advertised auction sale conducted by an experienced and well-regarding real estate auction firm with deep ties to the local and regional commercial market is the best way to maximize value.

11. Moreover, there is also no way to tell, at this stage of the case, whether Keystone's claims will be allowed, and if so, at what amount. Given that the damage to the property resulting from the departure of the tenant happened on Keystone's watch, after the Debtor's manager was dispossessed and threatened with legal action if he "trespassed" on the property or intervened in the "negotiations" ostensibly being

4

conducted by Taylor Jackson of Keystone, and given that Keystone, not the Debtor, lost the tenant and the income stream, though, it seems more than plausible that Keystone's claim may be appropriately adjusted by the Court during these proceedings.

12. Without knowing, until after the sale, what the property will bring when it is sold, and without knowing, prior to the conclusion of the claims process, the reasonable range of Keystone's allowed claim, if the claim is allowed at all, there is no way to accurately compute or estimate the estate's equity in the property. At this stage, the Debtor still hopes for a stalking horse bidder and is working with its professionals to bring about that result. However, there is another critical angle to this case that merits attention.

13. The receivership order entered on December 3, 2018 in this case (attached hereto as Exhibit "A"), in paragraph 7, entitled "Sale Procedure," directed the Receiver to begin advertising and marketing the Collateral "without delay" because "delay in soliciting buyers for the Collateral would unduly prejudice the parties to the proceeding." That was 355 days prior to the filing of this pleading— more than *6 times* the 59 days that will expire between the filing of this pleading and the proposed auction date of January 22, 2020. Nevertheless, having dithered, while in absolute control of the property, and having ignored the prompt sale mandate provided by the Common Pleas Court in the receivership order, Keystone attempts to argue, in paragraphs 4, 5, and 6 of its Objection, that the *Debtor's* objective is delay.

14. In fact, Keystone has had its bite at the apple, for nearly a year, and has failed to accomplish anything except the loss of a long-term tenant and significant

corresponding loss of value. The Debtor and its estate have appropriately sought relief in this Court, have satisfied their statutory duties, and are earnestly attempting to remedy the mess that Keystone has made of its balance sheet and its previously thriving rental business.

WHEREFORE, the Debtor respectfully asks that this Court OVERRULE Keystone's objection, APPROVE the Sale requested by the Debtor, and GRANT the Debtor all such further relief to which it is entitled.

Respectfully submitted,

/s/ Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Avenue
Cleveland, OH 44113
(216) 870-8866
tcoffey@tcoffeylaw.com

*Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Debtor's Response to Objection to Sale motion was served on all counsel and parties of record in this case by operation of the Court's electronic case filing system, on this 24nd day of November, 2019..

/s/ Thomas W. Coffey
Thomas W. Coffey (0046877)

*Proposed Counsel for the Debtor*

# IN THE COURT OF COMMON PLEAS
## COUNTY OF SUMMIT

KEYSTONE REAL ESTATE LENDING    )    CASE NO.: CV-2018-11-4911
FUND L.P.    )
    )    JUDGE JILL LANZINGER
    Plaintiff,    )
    )
-vs-    )
    )    **JUDGMENT ENTRY**
2265 ENTERPRISE EAST, LLC, *et al.*    )    **APPOINTING RECEIVER**
    )
    Defendants.    )

- - -

    This matter is before the Court upon the Verified Motion of Plaintiff, Keystone Real Estate Lending Fund L.P., for Expedited Appointment of a Receiver pursuant to Civ.R. 42(A), R.C. 2735.01, and the Loan Documents. The Verified Motion requests the appointment of a receiver over the real, persona, and other property of Defendant, 2265 Enterprise East, LLC.

    The Court makes the following determinations of fact:

1. On or about November 30, 2017, Defendant, 2265 Enterprise East, LLC ("Defendant"), entered into a commercial loan agreement with Plaintiff in which Plaintiff loaned the sum of $1,224,000.00. The Loan is memorialized in the Loan Documents attached to the Plaintiff's Complaint, which are incorporated herein.

2. Plaintiff is the originating lender and the current holder and owner of the Loan Documents.

3. Defendant was in default of its loan obligations under the Loan, which caused Plaintiff to file a Complaint in Foreclosure in the instant action.

4. The Loan is secured by the Collateral identified in the applicable Loan Documents.

5. Plaintiff is the first priority secured creditor in all of the subject Collateral.

6. Defendant consented to the appointment of a receiver without notice in the event it defaulted under its obligations set forth in the Loan Documents.

7. Plaintiff filed its Verified Motion seeking the appointment of Zachary B. Burkons of Rent Due LLC as the Receiver in this matter, among other things, to:

    a. Take possession of, manage, control, protect, and sell Defendant's real property referenced in the Motion and Exhibits attached to Plaintiff's Complaint (the "Real Property");

    b. Collect, manage, dispose, and liquidate all of Defendant's rents, leases, business assets, receivables, accounts, and other personal property more

1



fully described in the Motion and Complaint, with Exhibits (the "Personal Property" and collectively with the Real Property, the "Collateral").

The Court is satisfied that Plaintiff has shown, by clear and convincing evidence, that Plaintiff has a legally protectable interest in the Collateral and that some or all of the Collateral may be lost, removed, and/or materially injured if a receiver is not appointed, and further that Defendant agreed to the appointment of a receiver without prior notice. Accordingly, the Verified Motion for Expedited Appointment of Receiver is well-taken and hereby **GRANTED**.

NOW, THEREFORE, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1. **Appointment.** The Court hereby appoints Zachary B. Burkons of Rent Due LLC to serve as the Receiver over the Collateral in this matter.

2. **Bond.** The Receiver's appointment shall be conditioned upon the posting of a bond or other security in the amount of $10,000.00.

3. **Authority of Receiver**. The Court hereby authorizes and directs the Receiver, as of the date of this Judgment Entry, to do the following:

   a. To immediately take and have complete and exclusive possession, control, and custody of the Collateral, including but not limited to, all earnings, rents, issues, income, profits, and other revenues now due or that hereafter become due and payable (collectively, an including all payments made on or behalf of any tenants or other persons claiming an interest in the Collateral).

   b. With respect to the personal property, the Receiver is authorized to immediately remove any and/or all of the personal property, to a secure location. In connect with such removal, the receiver may request the assistance of law enforcement to ensure that no breach of the peace occurs during such removal or other action.

   c. To take custody, control, and possession of all rents, payments, revenues, funds, profits, bank accounts, real property, personal property, premises, and other assets of, or in the possession or control of Defendant that in any way relate to the Collateral.

   d. To manage, control, operate, maintain, and protect the Collateral and, if necessary, to retain a property management firm to manage the Collateral.

2

e.  To negotiate and enter into all contracts necessary to manage, control, operate, maintain, and protect the Collateral.

f.  To incur and pay all expenses reasonably necessary to manage, control, operate, maintain, and protect the Collateral, and in furtherance of any contracts necessary to manage, control, operate, maintain, and protect the Collateral.

g.  To institute, prosecute, and defend, compromise, adjust, intervene in, or become a party to such actions and proceedings in state or federal courts as may in its opinion be necessary or proper for the prosecution, maintenance, preservation, and management of the Collateral, the collection of unpaid and future rents, or the carrying out of the terms of this Judgment Entry, and likewise to defend, compromise, adjust, or otherwise dispose of any and all actions or proceedings instituted against it as Receiver or against the Collateral, where and to the extent that the Receiver determines, in its judgment, that such action is advisable or proper for the protection of the Collateral.

h.  To use the Revenues to pay reasonable expenses and expenditures related to the Collateral. Reasonable expenses and expenditures do not include: (i) any debts owed to parties or companies related to or affiliated with Defendant; (ii) any expenditures for capital improvements; or (iii) any debts, the payment of which is subject to review and approval of this Court (such as expenses of the receivership). The expenses set forth in sub-paragraphs (i) through (ii) may not be paid unless Plaintiff consents, which consent may not be unreasonably withheld, or the Court enters an Order after notice and a hearing specifically approving and authorizing payment of such debt in an amount certain. The expenses set forth in sub-paragraph (iii) may not be paid unless and until the Court enters an Order after notice and a hearing specifically approving and authorizing payment of such debt in an amount certain.

i.  To borrow from Plaintiff, on a secured basis, any funds required to pay necessary operating expenses of the Collateral (the "Funds"), provided that the Receiver obtains the prior written consent of Plaintiff for any such

3

Sandra Kurt, Summit County Clerk of Courts

borrowing, which consent may be withheld in Plaintiff's sole and absolute discretion. Any Funds advanced by Plaintiff shall be and are secured by a first priority security interest - senior in priority to any and all existing claims, whether secured or unsecured, in the Collateral - provided, however, that such security interest shall be subject to the Fee Carve-Out (as defined in Paragraph 8 below). Further, any Funds advanced by Plaintiff shall be held in a separate bank account and shall not be commingled with any existing funds held by Defendant, nor any of Defendant's officers, directors, members, or managers, in connection with the Collateral. Defendant is not required to file any additional financing statements or other documents or take any action to validate or perfect such security interest.

j.    To retain existing bank accounts with signing authority transferred to the Receiver and/or its delegees, and no other signatory retained. To open and maintain bank accounts to be used exclusively for deposits and disbursements of Revenues and funds of the receivership estate herein, and to direct payors, including, but not limited to, any tenants, to deposit funds due and owing to Defendant and/or the Collateral in such accounts as directed by the Receiver, and to supply Plaintiff with the identity of such bank accounts, along with copies of all monthly statements of account received by the Receiver as to such accounts.

k.    To continue utilizing the service of any employees, management companies, or other entities retained by Defendant (all of whom shall be subject to the Receiver's oversight and authority, and shall be answerable to the Receiver) to conduct the day-to-day operations of the Collateral. As an incident to this authority, the Receiver may hire or terminate personnel or independent contractors, and adjust the salaries or compensation of personnel or independent contractors, in the Receiver's discretion.

l.    To secure appropriate liability and property damage insurance for the Collateral and to pay any premiums for additional insurance coverage for the Receiver (including, without limitation, an errors and omissions policy and an umbrella policy) in connection with the Collateral; provided, however,

4

that the Receiver deems the existing insurance, if any, for the Collateral to be insufficient or nonexistent.

m.  To pay and disburse to the Receiver a fee for the Receiver's services and reimbursement for any reasonable and necessary disbursements the Receiver incurs on behalf of the receivership estate, in accordance with the procedures and limitations set forth in Paragraphs 3(h)(iii), 8, and 9 herein.

n.  To maintain detailed accounting records, supplied to the Court and to Plaintiff upon request, an itemized accounting of the Revenues and any other funds received by or on behalf of the Receiver, and operating expenses and other disbursements (including the Receiver's fees) paid or disbursed by or on behalf of the Receiver, and to file such reports of receipts and disbursements as required under this Order.

o.  To take possession of or, if needed, to recover all mail or packages addressed to Defendant in connection with the Collateral. The United States Postal Service and equivalent private delivery services (e.g., United Parcel Service, FedEx, etc.) are directed to release all such mail and packages to the Receiver or a designee of the Receiver.

p.  To obtain an independent appraisal of the Collateral and to advertise and show the Collateral subject to the procedures and limitations of Paragraph 7 of this Order, including, but not limited to, seeking any required approvals or consents from any governmental or quasi-governmental entities to facilitate the transfer and assignment of the Collateral; and to sell the Collateral free and clear of all liens upon motion and after notice to all parties in interest and a hearing.

q.  To immediately retain and employ professional persons who, in the Receiver's judgment, are necessary to advise and assist the Receiver, commencing upon the entry of this Order (the "Professionals"). Such professional persons, whose retention is hereby. In addition, the Receiver is authorized to compensate such Professionals subject to the procedures and limitations set forth in Paragraphs 4(g)(iii), 9, and 10 of this Order.

5

Sandra Kurt, Summit County Clerk of Courts

    r.  To take any and all actions, not specifically enumerated herein, which are necessary to properly and adequately manage, control, operate, maintain, and protect the Collateral during the pendency of this action.

4. **Borrower.**

    a.  Borrower, its property managers, managers, agents, representatives, shareholders, members, partners, affiliates, parents, and subsidiaries, and all of their respective employees, are ordered (a) to cooperate with the Receiver in the transition of the management of the Collateral to the Receiver, (b) not to interfere with the receivership, and ( c) to turn over to the Receiver all of the following pertaining to the Collateral, in any form whatsoever, to the extent that such items are in their possession, custody, or control:

        i.  All keys (including master keys), alarm codes, access devices, and access codes, and a list of all persons possessing any keys, alarm codes, access devices, or access codes.

        ii.  All leases including all communication/correspondence files, including without exclusion all leases and communication or correspondence files relating to any cell phone towers or antennae attached to or located on or about the Real Property.

        iii.  Documents pe1taining to all pending new leases and lease renewals, as well as all lease abstracts.

        iv.  A current detailed rent-roll.

        v.  Tenant contact names and telephone numbers.

        vi.  The occupant ledgers.

        vii.  All deposit accounts into which Income has been deposited, whether or not the accounts are in the name of Borrower.

        viii.  All security deposits, security deposit accounts, and an accounting for all security deposits.

        ix.  The petty cash fund.

        x.  A current aged account receivable/delinquency report.

        xi.  An aged listing of all trade payables and other payables.

        xii.  A list of all utilities, utility accounts, utility deposits, and meters.

        xiii.  Year-end 2016 and 2017 and year-to-date 2018 operating statements.

Sandra Kurt, Summit County Clerk of Courts

xiv. All on-site employee payroll records and employee files and applications.

xv. An inventory of all equipment, furniture, vehicles and supplies.

xvi. All existing contracts relating to the Real Property.

xvii. All pending bids for contractor work.

xviii. All insurance policies, certificates of insurance, insurance binders, and accords insuring or related to on the Real Property.

xix. All tenant and vendor insurance certificates and loss runs.

xx. Information regarding all insurance claims submitted in the past three years.

xxi. Surveys, site plans, specifications, floor plans, drawings, measurements, title reports, environmental reports, physical condition studies, appraisals, photographs of any kind, including aerials, marketing materials, and similar material.

xxii. Documents identifying and summarizing all pending litigation (excluding this action), including building code and fire-life-safety violations and evictions.

xxiii. All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies, and all passwords needed to access: (i) all software and computer files, (ii) all email account related to the Collateral, and (iii) all financial records, including all records concerning the Income, and the operation and management of the Collateral.

xxiv. Borrower's FEIN/TIN.

xxv. All real estate tax related information including historical bills, appeals documents including appeals consultant contracts, parcel identification numbers, and a current status of any appeals.

xxvi. Such other records pertaining to the management of the Collateral as may be reasonably requested by the Receiver.

b. Borrower, its property managers, managers, agents, representatives, shareholders, members, partners, affiliates, parents, and subsidiaries, and all of their respective employees are prohibited from removing any personal

7

Sandra Kurt, Summit County Clerk of Courts

property belonging to Borrower from the Real Property, or diverting any
Income.

   c.   Borrower, its property managers, managers, agents, representatives,
        shareholders, members, partners, affiliates, parents, and subsidiaries, and all
        of their respective employees shall fully cooperate with the Receiver in (i)
        adding the Receiver and Lender as additional insureds and the Lender as the
        loss payee on all insurance relating to the operation and management of the
        Collateral including, fire, extended coverage, auto and van coverage,
        property damage, liability of all kinds, umbrella/excess liability, fidelity,
        errors and omissions, and workers compensation (employer liability and
        employment practices liability), and (ii) modifying the policies if deemed
        appropriate by the Receiver, but subject to approval for any modifications to
        insurance. Borrower, its property managers, managers, agents,
        representatives, shareholders, members, partners, affiliates, parents, and
        subsidiaries, and all of their respective employees are prohibited from
        canceling, reducing, or modifying any insurance coverage in existence with
        respect to the Collateral. If the Receiver cannot be named as an additional
        insured on any insurance policy, the Receiver shall obtain its own insurance
        coverage and the cost of the insurance shall be an expense of the
        receivership.

5.  **No Claims Administration Duties**. The Receiver shall not perform any claims
    administration tasks at this time. However, the Court reserves the right to amend
    this Order, in its sole discretion, to provide for claims administration by the
    Receiver.

6.  **Limitations on Receiver's Liability**. The Receiver, its employees, agents,
    professionals it may retain to assist it with the performance of its duties, and others
    engaged in connection herewith shall not be liable for actions taken, actions not
    taken, or decisions made in performing the duties of the Receiver in this matter that
    are based upon the exercise of reasonably prudent business judgment. The Receiver
    shall have no responsibility for accounts receivable (if any) not paid or transferred
    to the Receiver, other than to seek recovery of such funds from any person or entity
    that owes or holds them. Further, so long as the Receiver acts as authorized herein,

8

Sandra Kurt, Summit County Clerk of Courts

the Receiver shall be indemnified and held harmless by the receivership estate from any right, claim, or causes of action brought against the Receiver, including the costs and expenses of defense of such claims or actions. The Receiver shall not be liable for the obligations of Defendant to third parties (i.e., persons or entities that are a party or not a party to this litigation) now existing, or hereafter incurred, including, without limitation: (a) tax liabilities to any governmental entities, now existing or hereafter incurred (including, without limitation, corporate activity taxes, sales taxes, payroll taxes, income truces, property taxes, or back taxes of any kind); (b) worker's compensation and unemployment compensation premiums or other obligations; ( c) claims, causes of action, cleanup or remediation costs, or liability of any kind, manner, or respect relating to any environmental conditions or contamination of the Collateral and/or any claimed or actual violations of any state or federal environmental laws that relate to orarise out of the Collateral; ( d) wages, benefits, and other compensation due to employees, officers, directors, or agents; and ( e) contract indebtedness to third parties arising prior to its appointment and qualification as the Receiver.

7. **Sale Procedure.** As it appears to the Court that delay in soliciting buyers for the Collateral would unduly prejudice the parties to the proceeding, the Court believes it is prudent to begin advertising and marketing the Collateral without delay. Accordingly, following the Effective Date, the Receiver shall obtain independent appraisals or other formal opinions of the Collateral's value (to the extent the Receiver determines, in his discretion, that such appraisals or formal opinions are necessary to effectuate commercially reasonable sales) and shall advertise and market the Collateral to the public in order to sell the Collateral in such a manner as to realize as much value as possible for the receivership estate. If Plaintiff has such an independent appraisal, the Receiver may, in the exercise of its reasonably prudent business judgment, utilize an independent appraisal provided by Plaintiff in lieu of procuring an additional appraisal. To effectuate a sale, the Receiver or Plaintiff must apply to the Court for authority to sell and must, in the application, disclose the terms and conditions of such sale. All parties in interest shall be served with the application and shall have ten (10) days thereafter to serve and file an objection or

9

to otherwise be heard on the application prior to the entry of any Order authorizing the sale of Collateral.

8. **Carve-Out for Fees**. Plaintiff's liens and security interests in the Collateral shall be and are subject and subordinate in all respects to the compensation for services rendered or reimbursement of expenses incurred that are approved and allowed by the Court after notice and an oral or non-oral hearing to the Receiver and the Professionals (the "Fee Carve-Out"). The Fee Carve-Out shall be subject to the terms and conditions set forth in Paragraph 9.

9. **Payment of Fees and Expenses; Retention of Professionals**. The Receiver and Professionals retained by the Receiver shall receive reasonable compensation for the services rendered pursuant to the duties as specified *in* this Order, with prior approval by this Court. The Receiver shall be compensated at the rate of $225.00/hour, while the paraprofessionals and other staff employed by the Receiver shall be compensated at the rate of $90.00/hour. The Receiver and Professionals retained by the Receiver shall further receive reimbursement of expenses and disbursements the Receiver incurs in connection with the performance of its duties. To obtain approval for payment of fees and expenses, the Receiver and Professionals retained by the Receiver shall submit a joint application for the payment of fees and expenses (partial or final) to the Clerk of this Court and shall serve copies on all parties. Upon receipt of an appropriate fee application from the Receiver and Professionals retained by the Receiver, the Court may approve or set for hearing the matter of fees and expenses for the Receiver and Professionals retained by the Receiver not sooner than ten (10) days after the filing of the application. Any parties (including, without limitation, Plaintiff) who wish to object to the application shall file an objection within ten (10) days after the filing of the application. If no objection is filed within ten (10) days, the application shall be deemed approved. All payments approved by the Court pursuant to this Paragraph shall be paid first from Revenues and then from the sale proceeds from the sale of the Collateral.

10. **Right to Set Budget**. Generally, the Receiver is directed to use best efforts, consistent with the Receiver's duties herein and reasonably prudent business judgment, to handle this matter as cost-effectively as possible, and shall delegate

10

duties and conserve resources to the extent it is reasonable to do so. Plaintiff has the right, upon motion to the Court, and upon terms that the Court approves, to set a budget (the "Budget") at any time for any fees and expenses incurred by the Receiver and/or the Professionals from the date of a Court Order granting such motion. The Budget, once established, may be revised upon motion by the parties. Plaintiff must approve any revision to the Budget, and has absolute discretion to approve or disapprove any revision thereto. Plaintiff's decision to consent to a revision of the Budget may or may not result in a change in the amount of the Fee Carve-Out. The parties shall have ten (10) days to submit any objections, responses, or other comments in response to any new or revised Budget submitted pursuant to this Paragraph. Any new or revised Budget submitted pursuant to this Paragraph must be approved by the Court. The Receiver and/or any Professionals employed by the Receiver have the right, upon seven (7) days written notice, to resign if they do not approve of the creation or modification of any Budget.

11. **Injunction against the Defendants and their Affiliates**. Defendant and all other individuals and entities affiliated with Defendant, and all officers, directors, attorneys, accountants, agents, employees, members, management companies, independent contractors, or any other persons or entities acting in concert or participating with Defendant, and all those who are under Defendant's direction or control (collectively, the "The Defendant Parties"), are hereby enjoined and directed to fully and completely cooperate with the Receiver, and forthwith upon the entry of this Order, to surrender and deliver to the Receiver:

    a. the Collateral;

    b. all keys (including master keys), alarm codes, access devices, and access codes, and a list of all persons possessing any keys, alarm codes, access devices, or access codes related to any of the Collateral;

    c. any and all books, records, leases, plans, architectural and engineering drawings, economic forecasts and/or projections, marketing materials, correspondence with actual or potential buyers, tenants, ground lessees, contractors, trades people, vendors, contracts, agreements, purchase orders, invoices, checks, checkbooks, bank account statements, ledgers, journals, computer source code and passwords, payroll and personnel files, and other

11

Sandra Kurt, Summit County Clerk of Courts

documents of any kind or description, in whatever form they may be maintained (including in any electronic media or paper), related to the Revenues, the Collateral, and/or the operation of the Collateral, that the Receiver may deem necessary (in the Receiver's sole discretion) to fulfill the Receiver's duties and responsibilities pursuant to this Order and applicable law;

d.  all cash, bank accounts, and securities (further including any and all bank accounts or securities of any kind in the name of Defendant or any present or former property manager for or agent of Defendant) relating to the Collateral, plans and specifications, correspondence with residents, security deposits, resident or other agreements, deposits (other than with respect to bond debt) held in trust or escrow for any purpose (such as the payment of real estate taxes and insurance premiums), all other sums of any kind relating to the use, employment, possession, improvement, or occupancy of the Collateral, all records and other information related to the Revenues, the Collateral, its operation, and/or to any property taxes, repairs, maintenance, insurance, accounts payable and receivable, and other matters pertaining to the Collateral and its operation;

e.  all Revenues, including all accounts receivable, earnings, rents, issues, profits and other revenues of any kind or description previously, currently, or hereafter derived from or in any manner related to the Collateral; and

f.  any and all documents necessary to name the Receiver as a primary insured party on any existing liability and property damage insurance coverage applicable to the Collateral.

The Receiver shall have the right to remove the current owners, officers, directors, shareholders, agents, employees, representatives, creditors and any other interested persons from the Collateral if they fail to cooperate with the Receiver.

12. **Injunction of Other Claimants**. Other than Plaintiff, all creditors, claimants, bodies politic, parties in interest, and their respective attorneys, agents, employees, and all other persons, firms, and corporations are hereby, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the

12

Sandra Kurt, Summit County Clerk of Courts

Collateral, the books, records, revenues, profits, and related assets associated with the Collateral, or against the Receiver in any Court. Said parties are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon any of the Collateral or the books, records, revenues, profits, and related assets associated with the Collateral, or upon the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of its duties in the proceeding or with the exclusive jurisdiction of this Court over the Collateral and the books, records, revenues, profits, and related assets associated with the Collateral.

13. **Payment of Revenues**. All parties indebted or otherwise obligated to Defendant for any matters related to the Collateral are hereby directed to pay over to the Receiver all Revenues now due or unpaid or that may hereafter become due to Defendant, until further order of this Court.

14. **Interim Payments to Plaintiff**. The Receiver may pay to Plaintiff, in partial satisfaction of the Loan, by the tenth day of each month, all Revenues collected from the previous month, to the extent those Revenues exceed the expenses and fees of the Receiver and the Professionals as well as anticipated expenses to be incurred during the applicable month. Any fees or expenses withheld by the Receiver under this section shall still be subject to Paragraphs 8, 9, and 10, and any withheld fees or expenses not ultimately approved by the Court shall be promptly paid to Plaintiff.

15. **Accountings**. The Receiver shall file with the Clerk of this Court a report two months from the Effective Date of this Order detailing all money received and disbursed together with vouchers or cancelled checks covering such disbursements, and shall thereafter file similar reports with the Clerk of this Court on a monthly basis.

16. **Tax Returns**. The Receiver shall have no responsibility to prepare or file state or federal income tax returns relating to the receivership or the operation of the Collateral.

17. **Forensic Investigation**. Without prior order of this Court, the Receiver will not conduct any type of forensic investigations.

13

Sandra Kurt, Summit County Clerk of Courts

18. **Penalties for Interference**. Any entity, person, or individual who willfully interferes with the authority of the Receiver as set forth in this Order or any subsequent Order of this Court shall be subject to all appropriate penalties provided for under the laws of the State of Ohio and the United States, and any such conduct may be punishable as a contempt of Court.

19. **Utilities**. Any utility company providing services to the Collateral, including gas, electricity, water, sewer, trash collection, telephone, communications, or similar services, shall be prohibited from discontinuing services to any of the Collateral based upon unpaid bills incurred by Defendant or its agents. Further, such utilities shall be prohibited from demanding that the Receiver deposit funds in advance to secure such services.

20. **Advances**. Plaintiff may, in its sole discretion, make advances for the payment of the following expenses in aid of the Receiver:

    a. Utilities for the Premises, including, without limitation, gas, electric, telephone, and water;

    b. Security for the Premises;

    c. Insurance for the Premises;

    d. Taxes of any kind or nature accruing after the receivership required to be paid on the Premises by the statutes of the United States or any state political subdivision or any governmental agency;

    e. Such expenses for the Receiver, and its attorneys, accountants, or other agents employed by the Receiver; and

    f. Such other expenses necessary to maintain and preserve the Premises.

Any and all monies advanced by Plaintiff shall become expenses of administration of the receivership, shall be refundable to Plaintiff, and shall be secured by the Collateral and other receivership property.

21. **Effective Date**. This Order shall be effective as of the date of entry.

22. **No Just Reason for Delay**. The Court has determined that there is no just reason delay.

IT IS SO ORDERED.

14

*Jill Flagg Lanzinger*

_____

JUDGE JILL LANZINGER

**The Clerk shall serve upon all parties not in default for failure to appear notice of this judgment and its date of entry upon the journal.**

Submitted and Approved by:

DINN, HOCHMAN & POTTER LLC

/s/ Jason A. Whitacre
JASON A. WHITACRE (0077330)
BENJAMIN D. CARNAHAN (0079737)
5910 Landerbrook Drive, Suite 200
Cleveland, Ohio 44124
(440) 446-1100 (Telephone)
(440) 446-1240 (Facsimile)
jwhitacre@dhplaw.com

DAVID A. WEINER
5910 Landerbrook Drive, Suite 200
Cleveland, Ohio 44124
Attorneys for Plaintiff

15