**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: 2265 Enterprise East LLC, | ) | Case No. 19-52510 |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor in Possession. | ) | Judge Koschik |
| | ) | |

---

**DEBTOR'S OBJECTION TO MOTION TO DISMISS OR FOR STAY RELIEF**
**FILED BY KEYSTONE**

---

Debtor 2265 Enterprise East, LLC respectfully sets forth the following for its

Objection to the Motion to Dismiss or for Stay Relief filed by Keystone Real Estate Lending

Fund L.P. ("Keystone") [Docket No. 24] (the "Motion"):

## I.    KEYSTONE'S MOTION IS NOT SUPPORTED BY LAW OR FACT

Keystone has elected to assert that it is entitled to dismissal of this case based on the

alleged bad faith of the Debtor's Managing Member, James Breen. Its motion features

prominent footnotes on pages 1 and 2 full of salacious "facts" and innuendo about Mr.

Breen. The Motion ends with an outraged plea for sanctions against Mr. Breen, complete

with all the purple prose of a tabloid: "serial litigator," "sexual harassment claim," "whole

host of creditors." *See Motion,* paragraph 44. An excellent place to begin is to view all this

for what it is: evidence of the bad faith of Keystone, a "hard money" loan-to-own

"financing" shop whose plans to grab the Debtor's assets have been thwarted by this case.

Keystone relies heavily on a trio of "good faith" dismissal cases from the Sixth

Circuit that bear no resemblance to the facts of this case, even as "reported" by Keystone: *In*

*re Trident Associates Ltd. P'ship*, 52 F.3d 127 (6th Cir. 1995) ("*Trident*"); *In re Laguna Associates Ltd. P'ship,* 30 F.3d 734 (6th Cir.1994) ("*Laguna*") and *In re Charfoos*, 979 F.2d 390 (6th Cir. 1992) ("*Charfoos*"). *See Motion*, paragraph 26.

These cases should fall on deaf ears for a Court concerned with applying law to facts. *Trident* and *Laguna* are related cases involving "new debtor syndrome" from an era in which the debtor bar experimented with creating new corporate shells to hold assets that would otherwise be tarred with the economic sins of the original owners. Predictably, that strategy was not effective, and the cases were often dismissed on "good faith" (actually, "bad faith") grounds. However, there is no suggestion at all of anything remotely like new debtor syndrome in this case. Instead, the debtor is a well-established Ohio company with a long history of successful rentals that was ambushed by Keystone's efforts to snatch its property, rehabilitate it, and sell it at a high profit margin—an effort that continues unabated today. The Debtor is entitled to relief in this Court, and *Trident* and *Laguna* are factually inapposite.

The value seen by lienholders in cases like *Trident* and *Laguna* is that the cases set forth an authoritative-looking list of "good faith" factors that just happen to match the fact pattern of this case, as well as every other single asset real estate case ever filed. The fallacy of reliance on these factors was exposed by the excellent opinion of Judge James Queenan in the case of *In re Victoria Limited Partnership*, 187 B.R. 54 (Bankr. D. Mass 1995). That opinion points out that the list of factors is actually present in every single asset real estate company case: they are filed to stop foreclosures in state court, they involve a single asset, they typically have few employees and not many creditors other than a principle secured creditor. None of this is evidence of bad faith, as the *Victoria* opinion points out. In fact, Congress amended the Bankruptcy Copde in 1994 to expressly provide a section on stay

relief applicable only to single-asset real estate debtors: section 362(d)(3). If such cases were all subject to bad faith dismissal, that section would have no "customers." Instead, Congress recognized a need for relief for the single-asset cases.

Better cases on good faith, such as *In re Crown Vill. Farm, LLC*, 415 B.R. 86 (Bankr. D. Del 2009, look to whether the Chapter 11 case serves a valid purpose as a gage of good faith. As the *Crown Village* Court found:

> The Court's inquiry turns to whether the petition serves a valid bankruptcy purpose. The answer is a resounding "yes." It is clear to the Court that the bankruptcy strategy is designed to maximize the value of the estate and to preserve value that would otherwise be lost. In re Memorial Corp., 400 B.R. 420, 427 (D.Del. 2009). A proper purpose includes maximizing the value of a debtor's sole asset as is the case here where the Debtor will market the Crown Property and subject it to an auction process for sale to the highest and best bid. *In re Crown Vill. Farm, LLC, Id* at 93.

Cases such as *In re Sandusky Permanent LLC*, 2017 WL 2470864 (Bankr. N.D. Ohio 2017) have recognized that a debtor who desires to obtain the benefit of the automatic stay does not act in bad faith unless the stay is obtained for an improper purpose. Despite the obvious contempt (loathing?) that Keystone reserves for Mr. Breen, Keystone does notr, and cannot, point to any improper act undertaken by the debtor before or after this case was filed. There position amounts to the fact that Mr. Breen irritates Keystone by refusing to knuckle under. That is not bad faith though—even single asset debtors are entitled to bankruptcy relief where it is economically advantageous to seek it. The Debtor in this case has elected to turn to this Court to ends a state court receivership that ran for almost a year without a sale, the payment of taxes, or a tenant to replace the one that departed on the Receiver's watch. A well-advertised sale conducted by professionals is designed to maximize value, just as it did in *Sandusky Permanent LLC* and *In re Crown Vill. Farm, LLC*. Obviously, that is an attempt to reach economic justice—not bad faith.

3

## II.     KEYSTONE IS NOT ENTITLED TO STAY RELIEF

Keystone, having depleted the value of the debtor's property with a long vacancy period and a receivership that seemed designed never to end, now urges the Court that it is entitled to stay relief because the sale value of the property will not exceed Keystone's claim.

The obvious fallacy of that argument defies logic and common sense, and brings to mind the defendant who pleaded for mercy from the court after killing his parents, on the grounds that he was an orphan. Keystone predicates its arguments on the notion that it is entitled to the full value of its claims for default interest, late charges, and attorney's fees— claims that will be disallowed if the property value does not support them. Keystone ignores its own inequitable pre-petition conduct in refusing to accept a check that would have made it whole under its loan terms, as well as its refusal to abide by loan revision terms it drafted but claims that it never signed. Most importantly, Keystone ignores, and asks this this Court to ignore, its own malfeasance in connection with failure to keep a long-standing tenant and failure to re-tenant or sell the property, all in contravention of the receivership order.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

The evidence in this case shows that the decline in value of the property happened under Keystone's exclusive control, not the Debtor's. That decline is Keystone's responsibility, and the Debtor intends to hold Keystone to it in this Court. Keystone's hands are not clean, and it is not entitled to the relief it seeks. The Debtor's hands are clean, and it is entitled to the relief it seeks under chapter 11.

Respectfully submitted,

/s/ Thomas W. Coffey
Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Avenue
Cleveland, OH 44113
(216) 870-8866
tcoffey@tcoffeylaw.com

*Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Debtor's Objection to Motion to Dismiss or for Stay Relief was served on all counsel of record in this case by operation of the Court's electronic case filing system, on this 5th day of December, 2019.

/s/ Thomas W. Coffey
Thomas W. Coffey (0046877)

*Proposed Counsel for the Debtor*

5