# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In Re: | CASE NO. 19-52510-amk |
| 2265 ENTERPRISE EAST, LLC, | Chapter 11 |
| Debtor. | JUDGE ALAN M. KOSCHIK |

**OPPOSITION OF SECURED LENDER, KEYSTONE REAL ESTATE LENDING FUND L.P. TO DEBTOR'S MOTION FOR ENTRY OF STIPULATION AND AGREED ORDER FOR TURNOVER OF PROPERTY AND ACCOUNTING BY RECEIVER**

Now comes Keystone Real Estate Lending Fund L.P. ("Keystone") as the sole non-governmental secured creditor and also comprising 96% + of the secured debt of the Debtor in Possession (DIP) and 99.7% of the total debt identified on the Petition and unconditionally opposes the turnover of the sole asset of the DIP, the real property and improvements located at 2265 Enterprise East , Twinsburg, Ohio.; and requests that the property be restored to the Receiver for the following reasons:

    (i) The Debtor has refused to identify, verify, or in any manner reasonably acceptable to Keystone, provide proof of the mandatory casualty and premises liability insurance required by the Keystone mortgage;

    (ii) The Debtor has forced Keystone, through the Receiver, to continue to independently insure the sole DIP asset at a cost of $3,356.00;

1

(iii) The Debtor has refused to provide any information regarding the organization and ownership of the Debtor;

(iv) The Debtor has refused to provide any information regarding the source of funds allegedly 'contributed' by an unrelated entity to the "Breen Children's Trust";

(v) The Debtor has refused to provide any information regarding the DIP bank account.

Keystone, as the mortgagee is entitled to all of the above information to be satisfied that the sole asset of the Debtor is properly preserved, and that Keystone is adequately protected by/during the operation of sole asset of the DIP.

Keystone, immediately after the initial hearing in this proceeding, began a complexly futile process requesting the foregoing information from both of Debtor's counsel; and in the absence of any genuine information, conducted independent inquiries to try to determine the operation of the Debtor. (See; Exhibit C1-C5, Composite email correspondence)

1. Insurance.

The Keystone mortgage unconditionally requires the maintenance of certain insurances as set forth in Exhibit C to Keystones Motion to Dismiss (Dkt 24) And notwithstanding repeated inquiries to Debtor's counsel; the Debtor has furnished nothing more than baseless objections and some sort of contrived 'certificate' allegedly evidencing a purported 'blanket' insurance policy.

Incredibly, the purported 'certificate' is substantially identical to one furnished to the Recover in the IMG building foreclosure, another entity controlled by the Debtor's managing member (See: Exhibits A and B).

This certificate is unacceptable for several reasons:

(i) The certificate is a purported 'blanket' certificate which involves a property (IMG) already in foreclosure and receivership and violates the requirement of the mortgage in regards to 'blanket' insurance;

(ii) The Debtor has refused to provide a copy of the actual policy as required under the mortgage;

(iii) The Debtor has refused to provide proof that the premiums of even the purported policy have been paid or that adequate funds are available to pay premiums when due;

(iv) The purported 'certificate' identifies a $25,000.00 deductible, yet the Debtor represents that it only has $25,600.00 in the DIP bank account, which will be used for operations, taxes due in 40 days, and general operations; and of course the DIP has no source of income;

Keystone, has repeatedly and unfortunately unsuccessfully sought to obtain the appropriate insurance information, but the Debtor has refused to provide any information other than the certificate (Exhibit A) and has extensively attempted to communicate with Debtor, but has been rebuffed. (See; Exhibit C, Composite email correspondence)

Finally, because Debtor has *refused* to provide the required insurance information, Keystone has even been required to continue its independent insurance through the receiver at a cost of $3,356.00 the Debtor has failed and most importantly *completely refused* to provide adequate protecting to the secured lender/mortgagee in the form of required insurances.

2. The Debtor's ownership and DIP funding.

3

As set forth in detail in Exhibit C, Keystone has sought to obtain the most basic information regarding the ownership of the DIP and more importantly, the source and structure of the alleged 'contribution' of $25,600.00 to the DIP estate by the "Breen Children's Trust."

The DIP has refused to provide this information and the Debtor's principal has provided noting more than a bare declaration of 'funds in the DIP' account, without disclosing the bank account number, and any deposit verification. (See Exhibit D)

Additionally, the Debtor's principal; James Breen, has asserted on one occasion that the DIP, an LLC, has a sole member, the aforesaid Trust, yet on another, has sworn under oath that he as an individual is the sole member. (See: Exhibits D and E)

Notably as well is that the Trust, from information developed in other matters, constitutes some sort of conduit for funds to and from Mr. Breen and multiple other entities which he apparently controls; therefore other than the bare assurance noted above; there is no evidence that the Trust has actually advanced any funds. This problem is exacerbated the conduct of the Trust noted above and as set forth in Exhibit F, a sampling of the Trust bank account information.

Finally, there is no explanation of or logical reason why a fiduciary of a "Children's Trust," the Debtor's managing member would remove funds from a 'Children's Trust' and give them to a bankrupt entity with no income, no unsecured assets , and secured debt (@$1,600, 000.00) in excess of the Debtor's asserted present value of the vacant sole asset (@$1,200,000.00) And, with no documentation to support the alleged cash infusion.

3. Summary and Conclusion.

It is fundamental that in a Chapter 11 proceedings that the Debtor conduct itself with complete transparency; and in this case such is particularly critical since the Debtor has only one

4

19-52510-amk    Doc 42    FILED 12/06/19    ENTERED 12/06/19 12:49:41    Page 4 of 6

asset and secured debt presently in excess of the asset's value. And, has failed and refused to provide any transparency whatsoever which again, goes to the absence of adequate protection of the secured lender during the presumed ongoing conduct of the Debtor's 'reorganization'.

In conclusion, until the Debtor can demonstrate to this Court that it has actually complied with its obligations under the Code, the possession and control of the Debtor's sole asset must continue with the Receiver until further order of this Court.

Respectfully Submitted,

DINN, HOCHMAN & POTTER, LLC

/s/ Robert W. McIntyre
BENJAMIN D. CARNAHAN (0079737)
ROBERT W. MCINTYRE (0006768)
5910 Landerbrook Drive, Suite 200
Cleveland, Ohio 44124
Telephone: (440) 446-1100
Facsimile: (440) 446-1240
E-Mail: bcarnahan@dhplaw.com
E-Mail: rmcintyre@dhplaw.com
Attorneys for Creditor

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2019, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                      DINN, HOCHMAN & POTTER, LLC

                      /s/ Robert W. McIntyre
                      BENJAMIN D. CARNAHAN (0079737)
                      ROBERT W. MCINTYRE (0006768)
                      Attorneys for Creditor