IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In Re: | CASE NO. 19-52510-amk |
| 2265 ENTERPRISE EAST, LLC, | Chapter 11 |
| Debtor. | JUDGE ALAN M. KOSCHIK |
| | **SUPPLEMENT AND AMENDED OPPOSITION OF SECURED LENDER, KEYSTONE REAL ESTATE LENDING FUND L.P. TO DEBTOR'S MOTION FOR ENTRY OF STIPULATION AND AGREED ORDER FOR TURNOVER OF PROPERTY AND ACCOUNTING BY RECEIVER** |

Now comes Keystone Real Estate Lending Fund L.P. ("Keystone") as the sole non-governmental secured creditor and also comprising 96% + of the secured debt of the Debtor in Possession (DIP) and 99.7% of the total debt identified on the Petition and unconditionally opposes the turnover of the sole asset of the Debtor, the real property and improvements located at 2265 Enterprise East , Twinsburg, Ohio.; and herein supplements and amends its original Opposition and thereby respectfully requests that the property be (i) prevented from being turned over to the Debtor and/or (ii) immediately restored to the Receiver for the following reasons:

Subsequent to Keystone's initial objection, a partial examination of the Debtor's managing member, James Breen was conducted on December 6, 2019 before the United States Trustee at the First Meeting of Creditors scheduled in the proceeding.

Prior to the noted meeting :

(i) The Debtor has refused to identify, verify, or in any manner reasonably acceptable to Keystone, provide proof of the mandatory casualty and premises liability insurance required by the Keystone mortgage;

(ii) The Debtor has forced Keystone, through the Receiver, to continue to independently insure the sole DIP asset at a cost of $3,356.00;

(iii) The Debtor has refused to provide any information regarding the organization and ownership of the Debtor;

(iv) The Debtor has refused to provide any information regarding the source of funds allegedly 'contributed' by an unrelated entity to the "Breen Children's Trust";

(v) The Debtor has refused to provide any information regarding the DIP bank account.

At the Meeting:

Inquiries of the Debtor's 'managing member' James Breen provided absolutely no additional information regarding any of the foregoing, except that the Debtor identified the 'certificate' proffered as one issued to a "Manchester Realty" entity which 'may have been' the predecessor to the entity now owning the 'IMG' building which is in foreclosure.

At the Meeting, the Debtor represented , contrary to its prior representations to this Court, that *it was not* (the) "Breen Children's Trust " what was the owner of 'the three membership units/shares of the Debtor', but instead three separate and unrelated trusts for the benefit of three of Mr. Breen's minor children; and that Mr. Breen was the Trustee thereof. The Debtor refused to provide information or copies of the trusts.

Additionally, at the Meeting, Mr. Breen testified *that it was not* these 'equity owners' of the Debtor that had provided the represented $25,000.00 post-petition financing but instead that it was the Breen Children's Trust which had 'loaned' the Debtor via a 'note' for $25,000.00. Notably, neither the Debtor nor the Breen Children's Trust have adhered to the strict requirements of Sec. 364(b) of the Code and have failed to provide this Court and the creditors any information regarding the alleged transaction.

Notably, even at this Meeting, the Debtor de facto refused to provide even cogent answers to Keystone's questions; and refused to provide even a time and place when long-overdue critical insurance and debtor organization and financing information would be provided.

Again, Keystone, as the mortgagee is entitled to all of the above information to be satisfied that the sole asset of the Debtor is properly preserved, and that Keystone is adequately protected by/during the operation of sole asset of the Debtor.

Additionally, notwithstanding that not only had Keystone, immediately after the initial hearing in this proceeding, began a completely futile process requesting the foregoing information from *both* of Debtor's counsel; and in the absence of any genuine information, conducted independent inquiries to try to determine the operation of the Debtor. (See; Exhibit C1-C5, Composite email correspondence); this futile quest continued at the Meeting; what remains undisclosed are the following:

1. Insurance.

The Keystone mortgage unconditionally requires the maintenance of certain insurances as set forth in Exhibit C to Keystones Motion to Dismiss (Dkt 24) And notwithstanding repeated

3

inquiries to Debtor's counsel; the Debtor has furnished nothing more than baseless objections and some sort of contrived 'certificate' allegedly evidencing a purported 'blanket' insurance policy.

Incredibly, the purported 'certificate' is substantially identical to one furnished to the Recover in the IMG building foreclosure, another entity controlled by the Debtor's managing member, and/or 'Manchester Realty' (See: Exhibits A and B).

This certificate is unacceptable for several reasons:

(i) The certificate is a purported 'blanket' certificate which involves a property (IMG) already in foreclosure and receivership and violates the requirement of the mortgage in regards to 'blanket' insurance;

(ii) The Debtor has refused to provide a copy of the actual policy as required under the mortgage;

(iii) The Debtor has refused to provide proof that the premiums of even the purported policy have been paid or that adequate funds are available to pay premiums when due;

(iv) The purported 'certificate' identifies a $25,000.00 deductible, yet the Debtor represents that it only has $25,600.00 in the DIP bank account, which will be used for operations, taxes due in 40 days, and general operations; and of course the DIP has no source of income. (Notably, at the Meeting, the Debtor refused to answer questions regarding the risk of inadequate cash to fund a claim that would require the payment of the deductible)

Keystone has repeatedly and unfortunately unsuccessfully, sought multiple times to obtain the appropriate insurance information, but the Debtor has refused to provide any information other than the certificate (Exhibit A) and has extensive attempts to communicate with Debtor, as well as inquiry at the Meeting have been rebuffed. (See; Exhibit C, Composite email correspondence)

Finally, because Debtor has *refused* to provide the required insurance information, Keystone has been required to continue its independent insurance through the receiver at a cost of $3,356.00. And, therefore as well, the Debtor has failed and most importantly <u>*completely refused*</u> to provide adequate protection to the secured lender/mortgagee in the form of required insurances or adequate funds forward to pay the alleged 'deductible ' .....as set forth on the 'certificate' and in the Loan Agreement.

2. The Debtor's ownership and Post-petition Debtor funding.

As set forth in detail in Exhibit C, Keystone has sought to obtain the most basic information regarding the actual ownership of the Debtor and more importantly, the source and structure of the represented 'contribution' of $25,600.00 'equity' to the Debtor by the "Breen Children's Trust."

The Debtor has refused to provide this information and the Debtor's principal has provided nothing more than a bare declaration of 'funds in the DIP' account, without disclosing the bank account number, and any deposit verification. (See Exhibit D)

Additionally, the Debtor's principal; James Breen, has asserted on one occasion that the Debtor, an LLC, has a sole member; the aforesaid Breen Children's Trust, yet on another, has sworn under oath that he as an individual is the sole member; and now, that 'three trusts' are the true owners. In summary, these representations combined with the responses in the Meeting strongly indicates that Mr. Breen is not credible. (See: Exhibits D and E)

5

Critically, despite specific representations to the contrary in open Court; the true structure of the Debtor and its Post-petition 'financing' has emerged:

(i) Actual ownership is *now* represented by James Breen to be held in equal parts by three separate (2013) 'children's trusts' for three of James Breen's minor children which are controlled by James Breen as Trustee

(ii) The 'ownership' trusts *have not contributed* any Post-petition 'equity' as represented by the Debtor at the initial hearing

(iii) Ownership of the Debtor is now *not* as represented to be vested in (the) Breen Children's Trust

(iv) The Debtor apparently has received funds post-petition from the Breen Children's Trust which is controlled by James Breen, and said cash transfer is represented by James Breen to be evidenced by a 'note'

(v) The Debtor has refused to provide any information about the structure of the Debtor or the purported 'loan' by the unrelated entity controlled by James Breen

(vi) No proceedings have been instituted in this Court as required under Sec. 364 (b) to permit the Court and creditors to review and approve or object to such lending.

(vii) James Breen and the Breen Children's Trust are insiders as defined by the Code and such has not been brought before this Court as required under Sec. 364(b)

Notably as well is that the Breen Children's Trust, from information developed in other matters, constitutes some sort of conduit for funds to and from Mr. Breen personally; and multiple other entities which he apparently controls. Therefore other than the bare assurance noted above;

6

there is no evidence that this 'Trust' has actually advanced any funds. This problem is exacerbated the conduct of the Trust noted above and as set forth in Exhibit F, a sampling of the Trust bank account information. Indeed, even the partial information provided herein at Exhibit F clearly demonstrates that James Breen utilizes the purported Children's Trust as not only his personal bank account, but also as some sort of account for the business purposes of other 'James Breen' entities.

Finally, there is no explanation of or logical reason why; a fiduciary of a "Children's Trust," (established in 2010 by James Breen's late father, John Breen) who is also the Debtor's managing member, would remove funds from a 'Children's Trust' and loan them to a bankrupt entity with no income, no unsecured assets , and secured debt (@$1,600,000.00) in excess of the Debtor's asserted present value of the vacant sole asset (@$1,100,000.00) And, with no documentation to support the alleged cash infusion or critically, obtaining the required permission of this Court for Post-petition lending.

3. Summary and Conclusion.

It is fundamental that in a Chapter 11 proceedings *that the Debtor conduct itself with complete transparency;* and in this case such is particularly critical since the Debtor has only one asset and secured debt presently substantially in excess of the asset's value. And, Debtor has failed and refused to provide any transparency whatsoever which again, goes to the absence of adequate protection of the secured lender during the presumed ongoing conduct of the Debtor's 're-organization'; and indeed the Keystone's assertions of bad faith filing pending before this Court.

In contrast, the Debtor has made serial multiple and material misrepresentations to this Court:

(i) There is actual insurance in effect

(ii) The Debtor LLC entity is 'owned' by the Breen Children's Trust

(iii) The Breen Children's Trust as the sole 'owner' of the Debtor LLC, has made a $25,000.00 'capital contribution' to fund the operations of the Debtor

In conclusion, until the Debtor can demonstrate to this Court that it has actually complied with its obligations under the Code, has not serially lied to this Court, has not refused to provide even the most basic information about the Debtor's ownership, operations, and post-petition financing; the possession and control of the Debtor's sole asset must properly revert to or continue with the Receiver until further order of this Court.

Respectfully Submitted,

DINN, HOCHMAN & POTTER, LLC

/s/ Robert W. McIntyre
BENJAMIN D. CARNAHAN (0079737)
ROBERT W. MCINTYRE (0006768)
5910 Landerbrook Drive, Suite 200
Cleveland, Ohio 44124
Telephone: (440) 446-1100
Facsimile: (440) 446-1240
E-Mail: bcarnahan@dhplaw.com
E-Mail: rmcintyre@dhplaw.com
Attorneys for Creditor

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2019, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                          DINN, HOCHMAN & POTTER, LLC

                          /s/ Robert W. McIntyre
                          BENJAMIN D. CARNAHAN (0079737)
                          ROBERT W. MCINTYRE (0006768)
                          Attorneys for Creditor

9

19-52510-amk   Doc 44   FILED 12/09/19   ENTERED 12/09/19 12:29:12   Page 9 of 9