## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: 2265 Enterprise East LLC, | ) | Case No. 19-52510 |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor in Possession. | ) | Judge Koschik |
| | ) | |

---

## DEBTOR'S RESPONSE TO KEYSTONE'S OPPOSITION TO ENTRY OF STIPULATION AND AGREED ORDER FOR TURNOVER OF PROPERTY AND KEYSTONE'S SUPPLEMENT AND AMENDED OPPOSITION

---

Debtor 2265 Enterprise East, LLC respectfully sets forth the following for its Response to Keystone's Opposition [Docket No. 42] and Keystone's Supplement and Amended Opposition [Docket No. 44]:

### I. KEYSTONE'S OPPOSITION AND AMENDED OPPOSITION ARE OFF-POINT AND DO NOT ADDRESS THE ISSUE OF TURNOVER OR THE STANDARDS FOR THE EXCUSAL OF TURNOVER

1. Keystone's Opposition and Amended Opposition each focus on two issues: insurance and equity funding. Neither opposition, remarkably, makes any serious argument that the interests of creditors or equity security holders would be better served by permitting the Receiver to continue in possession of the property. That is an unexpected departure from the more typical case where it is argued that a receiver is better financed or better able to manage the property based on a demonstrated history of successful management of the subject property.

1

2. In this case, the secured creditor cannot make those arguments, and has not attempted to, because the state court receivership was not successful in any sense of the word. Here, Keystone's handpicked Receiver was appointed on December 3, 2018 (more than a year ago) and by his own admission, is out of money except for $1500 in the Receiver's account (which the Receiver, to his credit, has pledged to turn over to the Debtor). The Receiver was unable, for whatever reason, to keep the previous (long-term, paying) tenant or to find a new tenant or tenants for the property. The Receiver, for whatever reason, was also unable to pay real estate taxes on the property or to sell the property, in spite of the clear mandate of paragraph 7 of the Receivership Order (filed in this case as Docket Number 46) which directed the Receiver in unambiguous terms to sell the property expeditiously. There is no dispute about those facts.

3. Compliance with the mandate of Section 543 for a custodian to turn over property is subject to a narrow exception under Section 543(d), only where the interests of creditors and equity security are better served by the custodian (in this case, the Receiver) remaining in possession. Given the Receiver's demonstrated inability to retain a  long-term tenant who had occupied the entire building and had paid more than $180,000 per year for the privilege, or to obtain even one new tenant for any part of the building, or to pay taxes or sell the building, even over the span of a year, it is difficult to imagine a serious argument that anyone's best interests are served by continuing the Receiver in possession. In this instance, no

serious argument to that effect has been made.

## II.    THE INSURANCE "ISSUE" IS A NON-ISSUE, BECAUSE PROOF OF ADEQUATE INSURANCE COVERAGE HAS BEEN PROVIDED

4. Keystone has devoted a very great amount of time, money, energy, and especially paper to its seemingly perpetual argument that the Debtor has not maintained insurance on the property. Those arguments are devoid of factual or legal support. Attached as Exhibit A and B, respectively, are insurance certificates evidencing property insurance and liability insurance which have already been submitted on the docket of this Court. [Docket No. 33]. Attached as Exhibits C and D, respectively, are insurance certificates evidencing the same insurance, and expressly including indications that Keystone Real Estate Lending Fund LP is included as a loss payee. The Office of the United States Trustee has indicated to the undersigned Counsel that it accepts the certificates marked as Exhibits A and B as evidence of adequate insurance.

5. Keystone maintains, in its Amended Opposition, that the "Keystone mortgage unconditionally requires the maintenance of certain insurances...*See* Docket No. 44, bottom of page 3. That statement is not correct, and the mortgage is silent as to insurance.

6. Keystone asserts in its Amended Opposition that the insurance certificates furnished "violates the requirement of the mortgage in regards to 'blanket' insurance," *See* Docket No. 44, page 4, and complains, at the bottom of page 4 of that document, about the $25,000 deductible. *Id.* As noted above,

3

the mortgage is silent on insurance. However, attached as Exhibit E hereto are copies of pages 12 – 16 of the Loan Agreement between Keystone and the Debtor which were attached to the state court Complaint. The first paragraph on page 13 provides for the $25,000 deductible that Keystone complains about in its Amended Opposition. Subparagraph (B) on page 13 expressly refers to and permits the "blanket" policy provisions that Keystone claims are not allowed.

7.    These examples are not intended to be exhaustive, but they illustrate the untenable nature of Keystone's position. More importantly, perhaps, Keystone has apparently failed to realize that whatever elaborate provisions its loan agreement may contain, any deviation from them amounts at most to a breach of contract argument in a bankruptcy reorganization case. Keystone gets a claim for that, not a right of specific performance. The Debtor has demonstrated, through the certificates filed in Docket 33 on November 27, 2019, that **high-quality insurance through Travelers has been in place since 4/11/2019, long before this case was filed.** The insurance, moreover, is consistent with the requirements set forth in the Loan Agreement, which makes sense: Keystone presumably demanded proof of that insurance and reviewed the documents before the loan was issued.

8.    A final point: Keystone indicates in its pleading that it has continued its own insurance in place (something it professed at the hearing on November 26 to be unable to do). *See* Docket No. 44, page 2. In reality,

4

Keystone cannot, and has not, articulated any remotely reasonable position with respect to insurance, and has utterly failed to create a nexus between insurance and turnover.

## III. THE EQUITY FUNDING "ISSUE" IS A NON-ISSUE, AND THE DEBTOR HAS MORE THAN ADEQUATE FUNDS IN ITS ACCOUNT TO MAINTAIN A QUALITY EFFORT TO REHABILITATE ITS PROPERTY

9. Keystone devotes similar energy to an argument that there is no proof of the equity contributions made by Mr. Breen as Trustee of the Breen's Childrens Trust as detailed in the Verified Statement of James P. Breen Regarding Debtor in Possession Account filed in this Court on December 4, 2019 as Document No. 35.

10. That Verified Statement was filed as a result of the Court's directive to submit an affidavit with regard to the funding. Attached hereto as Exhibit F is a redacted copy of an email sent by Mr. Breen to the undersigned Counsel on November 27, 2019, containing three photographic images. The first page shows a check in the amount of $22,000 drawn on the Breen Childrens Trust account, together with a deposit ticket for the Debtor's DIP account in the amount of $22,000. The second page shows the receipt for the deposit. The third page shows the available balance of $3,600 (consistent with the representation in Mr. Breen's Verified Statement that the account contained over $25,000) and also consistent with the undersigned Counsel's in-court representation that the account contained

some $3,000 odd dollars from an initial equity deposit and Mr. Breen added more to bring the total above $25,000.

11. The Amended Opposition is rife with claims that a loan has been made in violation of the bankruptcy code, that equity ownership is not as represented, and that the equity was a loan. None of that conjecture is supported by any evidence, and all of it is contrary to the Verified Statement and the representations of the undersigned to the Court.

12. There is no loan to the Debtor from any entity other than Keystone itself, and the money deposited to the DIP was deposited, on advice of counsel as an equity contribution. Mr. Breen is correctly identified as the equity holder in his capacity as Trustee in the List of Equity Security Holders filed with this case, and he is in fact the Trustee of two different trusts for his minor children. The fact that one of those trusts advanced the money for the equity contribution to the other, which made the equity contribution, is of no practical consequence here, and does not change the fact that Mr. Breen, as Trustee, advanced equity funding to the Debtor on the advice of counsel to ensure that this case would be adequately funded. As the attached photographic images show, it is adequately funded.

13. There are no legal restrictions on equity holders (including Mr. Breen as the Trustee of either trust) putting equity into an estate account, as opposed to trying to remove funds alleged to be equity. Contrary to the assertions made in the Amended Opposition, there has been no deviation or change in ownership. To the extent that the Debtor refused (on advice of counsel) to

answer questions concerning the trusts at the 341 meeting, not every aspect of a Childrens Trust is subject to discovery merely because it is an equity owner in a Chapter 11 debtor.

14. Moreover, Keystone's Counsel (who arrived with a copy of a trust and attempted, unsuccessfully, to turn the 341 meeting into a deposition about its contents) persisted in littering the record with the names of the minor children in violation of their privacy rights, and the trust copy, itself, appears to have been obtained, possibly illegally, from Mr. Breen's divorce case. It is obvious that a protective order will be required if this line of questioning, which veers impermissibly into private family matters, is allowed to continue at all.

15. Had Keystone really had doubts about whether the DIP account contained the equity that was described in Court, it could have called the undersigned and asked for a redacted bank statement. That never happened. What happened instead has been an elaborate waste of time and resources under the guise of opposition to the turnover of property by a custodian. There has been no attempt to create any nexus between the equity contribution and the turnover order.

## CONCLUSION

The secured creditor in this case, through its Receiver, was in the most complete and exclusive control of the Debtor's real property imaginable for a period of more than a year. *See, generally*, Receivership Order, Docket No. 46. The Order excluded the Debtor's manager in no uncertain terms. The result was a fiasco: loss of a long-term tenant, failure to

find any replacement tenants at all, failure to pay real estate taxes, failure to sell the property, in spite of the clear mandate of the Court of Common Pleas to do so. After a year of its exclusive control, Keystone now urges this this Court that the interests of creditors and equity holders would be better served if the Receiver were allowed to continue in possession. There is no imaginable argument that would support that position, especially where the Debtor had maintained a long-term profitable tenant, paid taxes, and operated solidly for years. In addition, the Debtor has made it clear that it desires to reorganize and regain the lost value of the property through the work of very well-qualified real estate brokers and sellers.

Against this backdrop, the secured creditor has argued that the Debtor has not maintained adequate insurance, and has illogically pursued that argument in the face of certificates demonstrating that very high quality insurance, consistent with the parameters set forth in the loan agreement, has been in place since at least April of 2019 and is not set to expire until April of 2020. Moreover, the certificates demonstrate that Keystone is a loss payee, and that the Office of the United States Trustee as Certificate Holder would be notified of any pending expiration. Keystone's position is without support in law or fact.

Undaunted, Keystone argues that the equity contributions made by the Debtor on the advice of experienced counsel were either not made in fact, or were undisclosed loans, or were made by improper transfers between beneficial owners not party to this case, or, in essence, must have been improper because Mr. Breen was involved. In reality, documentary evidence matches the representations of counsel for the Debtor and the Verified Statement of the Debtor's managing member. The Debtor has equity funds sufficient to run this case. Keystone's arguments are not rationally connected to the Section 543 standards for excuse

from the turnover requirements. Those standards are binary in the sense that turnover is only

excused if the creditor proves by a pre-ponderance of the evidence that the custodian's

control would better serve the interests of creditors and equity holders. No serious effort has

been made to do that, and the Court should OVERRULE Keystone's Oppositions and Enter

the Stipulation and Agreed Order for Turnover.

.

Respectfully submitted,

/s/ Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Avenue
Cleveland, OH 44113
(216) 870-8866
tcoffey@tcoffeylaw.com

*Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Debtor's Response to Objection to Keystone's
Opposition to Entry of Stipulation and Agreed Order for Turnover of Property and Keystone's
Supplement and Amended Opposition was served on all counsel and parties of record in this case
by operation of the Court's electronic case filing system, on this 11th day of December, 2019.

/s/ Thomas W. Coffey
Thomas W. Coffey (0046877)

*Proposed Counsel for the Debtor*

9



# CERTIFICATE OF PROPERTY INSURANCE

DATE (MM/DD/YYYY) 11/07/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER | CONTACT NAME: | |
|---|---|---|
| Aon Risk Services Northeast, Inc. Cleveland OH Office 1660 West Second Street Skylight Office Tower Suite 650 Cleveland OH 44113 USA | PHONE (A/C, No, Ext): (866) 283-7122 | FAX (A/C, No): (800) 363-0105 |
| | EMAIL ADDRESS: | |
| | PRODUCER CUSTOMER ID #: 570000056850 | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A: Travelers Property Cas Co of America | 25674 |
| 2265 Enterprise East, LLC (DIP) | INSURER B: | |
| 2265 Enterprise PKWY East Twinsburg OH 44087 USA | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

Holder Identifier :

## COVERAGES   CERTIFICATE NUMBER: 570079174115   REVISION NUMBER:

LOCATION OF PREMISES/ DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | | COVERED PROPERTY | | LIMITS |
|---|---|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | Y6303N439S24TIL19 | 04/11/2019 | 04/11/2020 | | BUILDING | | |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | | PERSONAL PROPERTY | | |
| | BASIC | BUILDING | | | | | BUSINESS INCOME | | |
| | BROAD | | | | | | EXTRA EXPENSE | | |
| | | CONTENTS | | | | | RENTAL VALUE | | |
| | X SPECIAL | | | | | X | BLANKET BUILDING | | $36,867,593 |
| | EARTHQUAKE | | | | | X | BLANKET PERS PROP | | $412,000 |
| | WIND | | | | | | BLANKET BLDG & PP | | |
| | FLOOD | | | | | X | BI & Extra Expense | | $7,434,800 |
| | X Bkt Bldg Ded | $25,000 | | | | | | | |
| | X Bkt PP Ded | $25,000 | | | | | | | |
| | INLAND MARINE | | TYPE OF POLICY | | | | | | |
| | CAUSES OF LOSS | | | | | | | | |
| | NAMED PERILS | | POLICY NUMBER | | | | | | |
| | CRIME | | | | | | | | |
| | TYPE OF POLICY | | | | | | | | |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | | |

CERTIFICATE NUMBER: 570079174115

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Stop Gap coverage is included under General Liability.  Certificate Holder includes:  John Weaver, US Department of Justice, Office of the US Trustee, Ohio and Michigan, Region 9, H.M. Metzenbaum US Courthouse, 201 Superior Avenue East Suite, 441, Cleveland, OH 44114.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| John Weaver US Department of Justice 201 Superior Avenue East, Suite 441 Cleveland OH 44114 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *Aon Risk Services Northeast, Inc.* |

ACORD 24 (2016/03)

© 1995-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

THE OHIO LEGAL BLANK CO., INC.

EXHIBIT A

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE(MM/DD/YYYY) |
|---|---|
| | 11/07/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Northeast, Inc. Cleveland OH Office 1660 West Second Street Skylight Office Tower Suite 650 Cleveland OH 44113 USA | PHONE (A/C. No. Ext): (866) 283-7122 | | FAX (A/C. No.): 800-363-0105 |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: Travelers Property Cas Co of America | | 25674 |
| 2265 Enterprise East. LLC (DIP) 2265 Enterprise PKWY East Twinsburg OH 44087 USA | INSURER B: The Phoenix Insurance Company | | 25623 |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES    CERTIFICATE NUMBER: 570079174112    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Limits shown are as requested

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | Y6303N439524TIL19 | 04/11/2019 | 04/11/2020 | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | X No Deductible/SIR | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | X POLICY PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | | |
| B | AUTOMOBILE LIABILITY | | | BA 3N438460 19 | 04/11/2019 | 04/11/2020 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | |
| | X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | |
| | | | | | | | Comp./Coll. Deductible | $1,000 |
| | UMBRELLA LIAB OCCUR | | | | | | EACH OCCURRENCE | |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | |
| | DED RETENTION | | | | | | | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | | | | PER STATUTE OTH-ER | |
| | ANY PROPRIETOR / PARTNER / EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) N/A | | | | | | E.L. EACH ACCIDENT | |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE-EA EMPLOYEE | |
| | | | | | | | E.L. DISEASE-POLICY LIMIT | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Stop Gap coverage is included under General Liability. Certificate Holder includes: John Weaver, US Department of Justice, Office of the US Trustee, Ohio and Michigan, Region 9, H.M. Metzenbaum US Courthouse, 201 Superior Avenue East Suite, 441, Cleveland, OH 44114.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| John Weaver US Department of Justice 201 Superior Avenue East, Suite 441 Cleveland OH 44114 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *Aon Risk Services Northeast, Inc.* |

ACORD 25 (2016/03)    ©1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
B

# ACORD®

## EVIDENCE OF PROPERTY INSURANCE

DATE (MM/DD/YYYY) 12/04/2019

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| AGENCY | PHONE (A/C, No, Ext): (866) 283-7122 | COMPANY |
|---|---|---|
| Aon Risk Services Northeast, Inc.<br>Cleveland OH Office<br>1660 West Second Street<br>Skylight Office Tower<br>Suite 650<br>Cleveland OH 44113 USA | | Travelers Property Cas Co of America |
| FAX (A/C No): (800) 363-0105 | E-MAIL ADDRESS: | |
| CODE: | SUB CODE: | |
| AGENCY CUSTOMER ID #: 570000056850 | | |

| INSURED | LOAN NUMBER | POLICY NUMBER Y6303N439524TIL1 9 |
|---|---|---|
| 2265 Enterprise East, LLC (DIP)<br><br>2265 Enterprise PKWY East<br>Twinsburg OH 44087 USA | | |
| | EFFECTIVE DATE 04/11/2019 | EXPIRATION DATE 04/11/2020 | CONTINUED UNTIL TERMINATED IF CHECKED |
| | THIS REPLACES PRIOR EVIDENCE DATED: | |

Holder Identifier :

Certificate No : 570079421774

## PROPERTY INFORMATION

LOCATION/DESCRIPTION

RE: 2265 Enterprise Pkwy. East, Twinsburg, OH 44087.

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

PERILS INSURED  BASIC  BROAD  [X]  SPECIAL

| COVERAGES/PERILS/FORMS | | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|---|
| Commercial Property Coverage | Blanket Real Propert | $ 36,867,593 | $ 25,000 |
| | Blanket Personal Property | $ 412,000 | $ 25,000 |
| | BI & Extra Expense | $ 7,434,800 | |
| | Bldg. Ordinance or Law | $ 250,000 | |

## REMARKS (Including Special Conditions)

Keystone Real Estate Lending Fund LP is included as Loss Payee in accordance with the policy provisions of the Property policy with respect to the above referenced Location.

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | | ADDITIONAL INSURED | LENDER'S LOSS PAYABLE | [X] LOSS PAYEE |
|---|---|---|---|---|
| Keystone Real Estate Lending Fund LP<br>5000 Executive Parkway, Suite 445<br>San Ramon CA 94583 USA | | MORTGAGEE | | |
| | LOAN # | | | |
| | AUTHORIZED REPRESENTATIVE | | | |
| | *Aon Risk Services Northeast, I* | | | |

ACORD 27 (2016/03)

© 1993-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

THE OHIO LEGAL BLANK CO., INC.

EXHIBIT C

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

DATE(MM/DD/YYYY): 12/04/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Northeast, Inc. Cleveland OH Office 1660 West Second Street Skylight Office Tower Suite 650 Cleveland OH 44113 USA | PHONE (A/C, No, Ext): (866) 283-7122 | | FAX (A/C, No.): 800-363-0105 |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED 2265 Enterprise East, LLC (DIP) 2265 Enterprise PKWY East Twinsburg OH 44087 USA | INSURER A: Travelers Property Cas Co of America | | 25674 |
| | INSURER B: | | |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES    CERTIFICATE NUMBER: 570079417875    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Limits shown are as requested

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | X | | Y6303N439524TIL19 | 04/11/2019 | 04/11/2020 | EACH OCCURRENCE | $1,000,000 |
| | ☐ CLAIMS-MADE  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | X No Deductible/SIR | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | X POLICY ☐ PRO- JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | | |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | |
| | ☐ ANY AUTO | | | | | | BODILY INJURY ( Per person) | |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | |
| | UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | |
| | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | |
| | DED ☐ RETENTION | | | | | | | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR / PARTNER / EXECUTIVE OFFICER/MEMBER (Mandatory in NH) Y/N N/A If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | | E.L. DISEASE-EA EMPLOYEE | |
| | | | | | | | E.L. DISEASE-POLICY LIMIT | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Stop Gap coverage is included under General Liability. RE: 2265 Enterprise Pkwy. East, Twinsburg, OH 44087. Keystone Real Estate Lending Fund LP is included as Additional Insured in accordance with the policy provisions of the General Liability policy.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Keystone Real Estate Lending Fund LP 5000 Executive Parkway, Suite 445 San Ramon CA 94583 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE Aon Risk Services Northeast, Inc. |

ACORD 25 (2016/03)    ©1988-2015 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

THE OHIO LEGAL BLANK CO., INC.
CLEVELAND, OHIO  44102-1799

EXHIBIT
D

Each financial statement shall be certified by (i) any representative of Borrower or acceptable to Lender if such financial statement is delivered by Borrower (ii) by Guarantor if such financial statement is delivered by Guarantor. Each financial statement, report or other information required to be delivered or caused to be delivered by Borrower to Lender under this Agreement and required hereunder to be certified by the chief financial representative of Borrower shall also certify that: (i) all of the covenants set forth in this Section 4.1(e) are fully performed and (ii) the representations and warranties set forth in the this Agreement and in the other Loan Documents are and remain true, correct and complete in all material respects except as disclosed in writing in the certificate. If Borrower fails to provide to Lender the financial statements and other information specified herein within the respective time period specified, and if such failure continues for 5 days after notice from Lender, then Borrower shall pay to Lender a fee in the amount of $1,500.00. In the event such failure shall continue for 15 days after notice from Lender, it shall constitute an Event of Default hereunder.

 (f) <u>Compliance Certificate</u>. Borrower shall deliver a Compliance Certificate to Lender on or before the Compliance Certificate Due Date.

 (g) <u>Estoppel Certificate</u>. Borrower shall:

  (i) within 20 days after receiving Lender's request, deliver a certificate stating (or explaining why the statement is false) (A) that the Loan Documents are valid and binding obligations of Borrower, (B) that the Loan Documents are enforceable against Borrower in accordance with their terms, (C) the Principal Amount, (D) that the Loan Documents have not been released, subordinated or modified, (E) the date of the last Loan payment, and (F) that Borrower is entitled to no offsets or defenses against enforcement of the Loan Documents; and

  (ii) within 20 days after receiving Lender's request, deliver a certificate from each requested Tenant, in form and substance acceptable to Lender, confirming the terms of the Tenant's Leases.

 (h) <u>Further Assurances</u>. Borrower shall, on Lender's request and at Borrower's cost: (i) promptly correct any defect concerning the Loan Documents, the Leases or the Collateral; (ii) execute, deliver and file any instrument, and do anything Lender reasonably determines to be necessary or desirable to carry out the purposes of the Loan Documents; (iii) take all necessary action to promptly protect the liens or the security interests under the Loan Documents against any Person other than Lender; (iv) take all actions reasonably necessary or desirable in Lender's determination to comply with the requirements or requests of any Governmental Authority; and (v) submit to Lender such additional information concerning the Collateral or the Contractors as Lender may reasonably request.

 (i) <u>Location and Use of Collateral</u>. All tangible Collateral will be used in the business of Borrower and shall remain in Borrower's control at all times at Borrower's risk of loss and shall be located on the Property.

 (j) <u>Insurance Requirements</u>.

  (i) <u>Insurance</u>. Borrower shall obtain and maintain, or cause to be maintained, insurance for Borrower and the Property providing at least the following coverages:

   (A) comprehensive "All Risk" or "Special Form" insurance on the Improvements and the personal property (A) in an amount equal to one hundred percent (100%) of the "*Full Replacement Cost*," which for purposes of this Agreement shall mean actual replacement value (exclusive of costs of excavations) with no waiver of depreciation, but the amount shall in no event be less than the outstanding Principal Amount; (B) containing an agreed amount endorsement with

12

2265 Enterprise - Loa[n]



THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
E

respect to the Improvements and personal property waiving all co-insurance provisions, or confirmation that co-insurance does not apply; and (C) providing for no deductible in excess of $25,000.00 for all such insurance coverage. In addition, Borrower shall obtain: (x) if any portion of the Improvements is currently, or at any time in the future, located in a Federally designated "special flood hazard area", flood hazard insurance in an amount equal to the outstanding Principal Amount or such other amount as Lender shall require; (y) earthquake insurance in amounts and form and substance satisfactory to Lender in the event the Property is located in an area with a high degree of seismic activity with a probable maximum loss (PML) exceeding twenty percent (20%), and (z) coastal windstorm insurance in amounts and in form and substance satisfactory to Lender in the event the Property is located in any coastal region, and if such windstorm coverage is excluded under the Special Form Coverage, provided that the insurance pursuant to clauses (x), (y) and (z) hereof shall be on terms consistent with the comprehensive "All Risk" or "Special Form" insurance policy required under this <u>Subsection (i)</u>;

(B)     commercial general liability insurance, including a broad form comprehensive general liability endorsement and coverage against claims for personal injury, bodily injury, death or property damage occurring upon, in or about the Property, such insurance (1) to be on the so-called "occurrence" form with a combined limit of not less than $2,000,000.00 in the aggregate and $1,000,000.00 per occurrence (and, if on a blanket policy, containing an "Aggregate Per Location" endorsement); (2) to continue at not less than the aforesaid limit until required to be changed by Lender in writing by reason of changed economic conditions making such protection inadequate; and (3) to cover at least the following hazards: (i) premises and operations; (ii) products and completed operations on an "if any" basis; (iii) independent contractors; (iv) blanket contractual liability for all legal contracts; and (v) contractual liability covering the indemnities contained in the Security Instrument to the extent the same is available;

(C)     rental loss and/or business income interruption insurance (1) with loss payable to Lender; (2) covering all risks required to be covered by the insurance provided for in subsection (A) above; for loss of Rents in an amount equal to one hundred percent (100%) of the projected gross income from operations for a period of twelve (12) months from the date of such Casualty (assuming such Casualty had not occurred) and notwithstanding that the policy may expire at the end of such period. The amount of such loss of Rents or business income insurance shall be determined prior to the date hereof and at least once each year thereafter based on Borrower's reasonable estimate from the Property for the succeeding twelve (12) month period. Notwithstanding anything to the contrary contained in this Agreement, all proceeds payable to Lender pursuant to this subsection shall be held by Lender and shall be applied at Lender's sole discretion to (I) the Indebtedness, or (II) Operating Expenses approved by Lender in its sole discretion; *provided, however*, that nothing herein contained shall be deemed to relieve Borrower of its obligations to pay the Indebtedness, except to the extent such amounts are actually paid out of the proceeds of such business income insurance;

(D)     at all times during which structural construction, repairs or alterations are being made with respect to the Improvements, and only if the

13

Property coverage forms do not otherwise apply, owner's and contractor's protective liability insurance covering claims not covered by or under the terms or provisions of the above mentioned commercial general liability insurance policy

      (E)     worker's compensation insurance with respect to any employees of Borrower, as required by any Governmental Authority or Applicable Laws;

      (F)     comprehensive boiler and machinery insurance, if applicable, in amounts as shall be reasonably required by Lender on terms consistent with the commercial property insurance policy required under subsection (i) above;

      (G)     motor vehicle liability coverage for all owned and non-owned vehicles, including rented and leased vehicles containing minimum limits per occurrence of not less than $1,000,000.00;

      (H)     umbrella or excess liability insurance in an amount not less than $5,000,000.00 per occurrence on terms consistent with the commercial general liability insurance policy required under subsection (ii) above;

      (I)     if the Property is or becomes a legal "non-conforming" use, ordinance or law coverage to compensate for the cost of demolition and rebuilding of the undamaged portion of the Property along with any increased cost of construction in amounts as requested by Lender;

      (J)     the commercial property business income, general liability and umbrella or excess liability insurance required hereunder shall cover perils of terrorism and acts of terrorism and Borrower shall maintain commercial property and business income insurance for loss resulting from perils and acts of terrorism on terms (including amounts) consistent with those required hereunder at all times during the term of the Loan so long as Lender determines that either (I) prudent owners of real estate comparable to the Property are maintaining same or (II) prudent institutional lenders (including, without limitation, investment banks) to such owners are requiring that such owners maintain such insurance; and

      (K)     upon 60 days' notice, such other reasonable insurance and in such reasonable amounts as Lender from time to time may reasonably request against such other insurable hazards which at the time are commonly insured against for properties similar to the Property located in or around the region in which the Property is located.

      (ii)     <u>Form and Quality</u>. All insurance policies shall be endorsed in form and substance acceptable to Lender to name Lender as an additional insured, loss payee or mortgagee thereunder, as its interest may appear, with loss payable to Lender, without contribution, under a standard mortgagee clause. All such insurance policies and endorsements shall be fully paid for and contain such provisions and expiration dates and be in such form and issued by such insurance companies licensed to do business in the state in which the Property is located, with a rating of "A:X" or better as established by Best's Rating Guide. Each policy shall provide that such policy may not be canceled or materially changed except upon 30 days' prior written notice of intention of non-renewal, cancellation or material change to Lender and that no act or thing done by Borrower shall invalidate any policy as against Lender. Blanket policies shall be permitted only if (A) Lender receives appropriate endorsements and/or duplicate policies containing Lender's right to continue coverage on a pro rata pass-through basis and that coverage will not be affected

14

2265 Enterprise - Loan Agreement

by any loss on other properties covered by the policies and (B) the policy contains a sublimit equal to the replacement cost of the Property in an amount approved by Lender which is expressly allocated for the Property, and any such policy shall in all other respects comply with the requirements of this Section. Borrower authorizes Lender to pay the premiums for such policies (the "**Insurance Premiums**") from the Insurance Impound, if any, as the same become due and payable annually in advance. If Borrower fails to deposit funds into the Insurance Impound, if any, sufficient to permit Lender to pay the Insurance Premiums when due, Lender may obtain such insurance and pay the premium therefor and Borrower shall, on demand, reimburse Lender for all expenses incurred in connection therewith.

  (iii) <u>Assignment</u>. Borrower shall assign the policies or proofs of insurance to Lender, in such manner and form that Lender and its successors and assigns shall at all times have and hold the same as security for the payment of the Loan. If requested by Lender, Borrower shall deliver copies of all original policies certified to Lender by the insurance company or authorized agent as being true copies, together with the endorsements required hereunder. If Borrower elects to obtain any insurance which is not required under this Agreement, all related insurance policies shall be endorsed in compliance with <u>Section 4.1(j)</u>, and such additional insurance shall not be canceled without prior notice to Lender. From time to time upon Lender's request, Borrower shall identify to Lender all insurance maintained by Borrower with respect to the Property. The proceeds of insurance policies coming into the possession of Lender shall not be deemed trust funds, and Lender shall be entitled to apply such proceeds as herein provided.

  (iv) <u>Adjustments</u>. Borrower shall give immediate written notice of any loss to the insurance carrier and to Lender. Borrower irrevocably authorizes and empowers Lender, as attorney in fact for Borrower coupled with an interest, to notify any of Borrower's insurance carriers to add Lender as a loss payee, mortgagee insured or additional insured, as the case may be, to any policy maintained by Borrower that is required under this Agreement, and if Borrower fails to diligently do so, to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's reasonable expenses incurred in the collection of such proceeds. Nothing contained in this <u>Section 4.1(j)</u>, however, shall require Lender to incur any expense or take any action hereunder

  (k) <u>Escrow</u>. Borrower shall not be required to make monthly deposits into the Tax and Insurance Escrow Account for Taxes and Insurance Premiums provided that (i) no Event of Default has occurred and is continuing, (ii) the Property is covered by insurance as required in herein, (iii) Borrower has provided sufficient evidence to Lender that the Insurance Premiums have been paid on or before the date the Insurance Premiums are due, and (iv) Borrower has provided sufficient evidence to Lender that the Taxes have been paid on or before the date the Taxes are delinquent. In the event the foregoing conditions are not satisfied, as additional security for the Indebtedness and Borrower's obligations under the Loan Documents, Borrower shall establish and maintain the Tax and Insurance Escrow Account. Contemporaneously with the establishment of the Tax and Insurance Escrow Account, Borrower will deposit into the Tax and Insurance Escrow Account a sum equal to all Real Estate Taxes and Insurance Premiums for the then current year, as Lender reasonably estimates. Thereafter, on each Interest Payment Date, Borrower shall pay to Lender, which Lender will deposit into the Tax and Insurance Escrow Account (x) a sum of money equal to 1/12th of the annual charges for the Insurance Premiums and (y) sum of money equal to 1/12th of the annual Taxes, which amounts shall be calculated as the necessary sufficient funds (as Lender reasonably estimates) to permit Lender to pay, at least 30 days prior to the due date, the next

15

installments for Real Estate Taxes and Insurance Premiums. Borrower shall ensure that Lender receives, at least 30 days prior to the due date, all invoices for Real Estate Taxes and Insurance Premiums. So long as no Event of Default has occurred and Lender has received all invoices for Real Estate Taxes and Insurance Premiums, Lender shall pay (or will permit Borrower to make withdrawals from the Tax and Insurance Escrow Account to pay) all invoices for Real Estate Taxes and Insurance Premiums. Any excess amounts in the Tax and Insurance Escrow Account may, at Lender's option, be retained in the account for future use, applied to the Indebtedness or refunded to Borrower. Borrower shall immediately remit to Lender funds (as Lender determines and demands) sufficient to satisfy any deficiency in the Tax and Insurance Escrow Account. The Tax and Insurance Escrow Account is not, unless otherwise explicitly required by Applicable Law, an escrow or trust fund. The Tax and Insurance Escrow Account will not bear interest. The Tax and Insurance Escrow Account may be mingled with the general funds of Lender. Borrower grants to Lender a security interest in all funds deposited with Lender for the purpose of securing the Loan. If at any time (i) the amount on deposit with Lender, together with amounts to be deposited by Borrower before such Insurance Premiums are payable, is insufficient to pay such Insurance Premiums, or (ii) the amount on deposit with Lender, together with amounts to be deposited by Borrower before such Taxes are payable, is insufficient to pay such Taxes, Borrower shall deposit any deficiency with Lender after 10 days' written notice. Lender shall pay such Taxes when the amount on deposit with Lender is sufficient to pay such Taxes and Lender has received a bill for such Taxes. During an Event of Default Period, Lender may apply the Tax and Insurance Escrow Account funds to the Indebtedness as Lender determines.

(l) <u>Operation of Property</u>. Borrower shall operate the Property in accordance with all Applicable Laws and in the same manner as is customary and usual in the operation of comparable commercially retail properties in the same metropolitan area as the Property. Borrower shall use the Property solely for commercial purposes. Borrower shall not use or allow the use of the Property in any manner which constitutes a public or private nuisance. Borrower shall: (i) use all commercially reasonable efforts to oppose any zoning reclassification of the Property, (ii) not seek, or acquiesce to, any zoning reclassification or variance for the Property; (iii) not impose any additional restrictive covenants or encumbrances upon the Property; (iv) not execute or file any subdivision plat affecting the Property; (v) not consent to any municipality's annexation of the Property to any municipality; (vi) not permit the Property to be operated as a cooperative or condominium; (vii) not permit any drilling or exploration for, or extraction, removal or production of, minerals from the surface or subsurface of the Property; (viii) not permit any action or inaction which may reasonably be expected to diminish the value of the Property.

(m) <u>Repair and Maintenance</u>. Borrower shall keep the Property in good order, repair, condition and appearance. Borrower shall promptly make all necessary repairs and replacements, to the Property. Borrower shall insure that the Property is not deteriorated, misused, abused or wasted. All replacements to the Property must be equal or better than the replaced Property was when it was new. Borrower may not, without Lender's prior written consent: (i) erect any new buildings or structures or other Improvements on the Property (other than Property repairs, restoration in connection with any casualty and/or improvements in connection with Leases); (ii) except for the foregoing repairs, remove any Property from the Land; or (iii) make any structural alteration or any other alteration to the Property involving an estimated expenditure of $50,000.00 or more. Lender (or its designee) may, at Borrower's expense, inspect or examine the Property during normal business hours and without unnecessarily interrupting the Tenants or the operations of the Property. Except during any Event of Default Period, Lender (or its designee) shall give Borrower 24 hours advanced notice (by any means and not subject to the terms of <u>Section 9.18</u> below). Borrower shall assist Lender (and its designees) in completing any inspection. Borrower (or its designee) may accompany Lender (and its designee) during any inspection of the Property. If Lender's inspection reveals that repairs to the Property are necessary, then Borrower shall complete all repairs or other work to Lender's reasonable satisfaction within 90 days after Lender

16

2265 Enterprise - Loan Agreement

| | |
|---|---|
| **From:** | Jim Breen <jbreen@jamesbreenre.com> |
| **Sent:** | Wednesday, November 27, 2019 12:24 PM |
| **To:** | Tom Coffey |
| **Subject:** | Proof of funds |





EXHIBIT
F

1

Business Date 11/27/2019
Teller #1    BC #00772               REF ▮

Total Checks Received........$22,000.00

Deposit - Checking - x2537........$22,000.00

_____

Deposit checks anywhere, anytime with Fifth
Third Mobile Deposit.*
Get the App at 53.com/mobile or
Text MOBILE to 535353

_____

*Mobile Internet data and text message
charges may apply. Please contact your
mobile service provider for details.
Basic Checking and Access 360 accounts
not eligible for Mobile deposit.

FDIC.  ⌂ Equal Housing Lender

Call (800) 972-3030 or visit 53.com



Jim Breen
API Global/James Breen Real Estate LLC
P: 216.902.8150 x202
C: 216.235.5991
E: jbreen@jamesbreenre.com

1360 E. 9th St., Suite 808, Cleveland, Ohio 44114